UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
REBECCA FAY WALSH,                        :
                                          :   Case No. 19-cv-4958-VSB
              Plaintiff,  :
                                          :
    v.                                  :
                                          :
TOWNSQUARE MEDIA, INC,                    :
                                          :
              Defendant.  :
                                          :
---------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TOWNSQUARE
MEDIA, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Rachel F. Strom
James E. Doherty
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Phone:  (212) 489-8230
Fax:  (212) 489-8340
RachelStrom@dwt.com
JimDoherty@dwt.com

*Counsel for Defendant
Townsquare Media, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT .......................................................................................................................... 5

    XXL'S USE OF CARDI B'S POST IS A FAIR USE ....................................................... 5

        A.    The Purpose and Character of XXL's Use Favors a Finding of Fair Use ............................................................................... 8

        B.    The Nature of the Copyrighted Work Supports a Fair Use Determination ............................................................................ 10

        C.    The Amount and Substantiality of Townsquare's Use Weighs in Favor of Fair Use ............................................................................ 12

        D.    The Effect of Townsquare's Use on the Photograph's Market Value Decisively Favors Fair Use ........................................................ 13

CONCLUSION ...................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adjmi v. DLT Entm't Ltd.*,
   97 F. Supp. 3d 512 (S.D.N.Y. 2015)...................................................................................7

*Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
   751 F.3d 71 (2d Cir. 2014).................................................................................................5

*Arica Inst., Inc. v. Palmer*,
   970 F.2d 1067 (2d Cir. 1992)...........................................................................................10

*Arrow Prods., LTD. v. Weinstein Co.*,
   44 F. Supp. 3d 359 (S.D.N.Y. 2014)..................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................5

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014)...............................................................................................12

*Authors Guild v. Google Inc.*,
   804 F.3d 202 (2d Cir. 2015).........................................................................................8, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................5

*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*,
   386 F. Supp. 2d 324 (S.D.N.Y. 2005)..............................................................................11

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006).......................................................................10, 11, 12, 13

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)....................................................................................6, 12, 13

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)................................................................................................7, 8, 12

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)....................................................................................*passim*

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*
   150 F.3d 132 (2d Cir. 1998)...............................................................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..................................................................................................................6

*Fitzgerald v. CBS Broad., Inc.*,
    491 F. Supp. 2d 177 (D. Mass. 2007) .....................................................................................12

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985).............................................................................................................6, 13

*Katz v. Chevaldina*,
    2014 WL 2815496 (S.D. Fla. June 17, 2014),
    *aff'd*, *Katz v. Google Inc.*, 802 F.3d 1178 (11th Cir. 2015)......................................................11

*Konangataa v. American Broadcasting Cos.*,
    2017 WL 2684067 (S.D.N.Y. June 21, 2017) ..........................................................................9

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998)....................................................................................................13

*Lombardo v. Dr. Seuss Enters., L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017).......................................................................................7

*Maxtone-Graham v. Burtchaell*,
    803 F.2d 1253 (2d Cir. 1986)..................................................................................................10

*New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*,
    904 F.2d 152 (2d Cir. 1990)....................................................................................................10

*North Jersey Media Grp. Inc. v. Pirro*,
    74 F. Supp. 3d 605 (S.D.N.Y. 2015).................................................................................11, 12

*Nuñez v. Caribbean International News Corp.*,
    235 F.3d 18 (1st Cir. 2000).....................................................................................................10

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004)......................................................................................................7

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001)......................................................................................................8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................................11

*Pu v. Russell Publ'g Grp., Ltd.*,
    2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016)............................................................................3

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997)........................................................................................................9

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) ............................................................................................... 7, 10

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016) .......................................................................................... 7, 8, 13

**Federal Statutes**

17 U.S.C. § 106 ........................................................................................................................... 6

17 U.S.C. § 107 ................................................................................................................. *passim*

17 U.S.C. § 505 ..................................................................................................................... 1, 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 5

Fed. R. Civ. P. 12(c) ............................................................................................................... 1, 5

Defendant Townsquare Media, Inc. ("Townsquare"), the owner and publisher of XXL magazine, respectfully submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRELIMINARY STATEMENT

Plaintiff, Rebecca Fay Walsh ("Plaintiff"), seeks to punish the news and entertainment magazine XXL for informing its readers about a social media post regarding a social media debate from a social media star – simply because that celebrity's social media post includes a portion of a photograph Plaintiff purportedly took.  But, Plaintiff cannot do so – as XXL's use of the social media post in this context is unquestionably a protected fair use.

Specifically, this case involves an Instagram posting from internationally renowned rapper, writer, television star, and social media celebrity, Cardi B – who herself notes that she first gained attention "for discussing her career as a stripper on social media; coupled with her 'no filter attitude', she became an Internet celebrity through Instagram." *See* https://www.cardibofficial.com/bio.  So it is no surprise that Cardi B and the famous fashion designer, Tom Ford, announced that they were collaborating on a lipstick shade for Tom Ford Beauty by posting matching Instagram posts.[1]  And, it's also no surprise that their Instagram posts instantly caused a heated debate among their vast armies of social media followers.  Cardi B – in her true "no filter" way – responded to that debate and also announced that her lipstick was so successful that it immediately sold out by posting the following on her Instagram page (the "Post"):

---

[1] *See* https://www.instagram.com/p/Bnec_8tn7lf/?utm_source=ig_embed (Tom Ford post); https://www.instagram.com/p/Bng-7Kml8eg/?utm_source=ig_embed (Cardi B post).

1



As is clear, Cardi B's Post included a picture of her lipstick as well as a portion of another picture, that Plaintiff claims to have taken (the "Photograph"), of her waving at a Tom Ford fashion show along with the heading that her lipstick "has already SOLD OUT!!!". Cardi B captioned the Post "Sorry:/…"

The website for XXL magazine reported on Cardi B's Instagram launch of her lipstick, as well as her cheeky Instagram response to the debate surrounding it. As part of that reporting, XXL embedded Cardi B's and Tom Ford's Instagram posts announcing the lipstick as well as Cardi B's Post announcing that the lipstick had sold out. Where, as here, a picture itself is the focus of a news story, newspapers and magazines may use that picture to explain to the public what the story is about – that is, in fact, the paradigmatic example of fair use. Because that is just what Townsquare did here, this case should be dismissed.

## FACTUAL BACKGROUND

Plaintiff alleges that on or about September 5, 2018, she took a photograph of international rapper and social media celebrity Cardi B waving to the camera at a Tom Ford fashion show in New York City. Amended Complaint ("Compl.") ¶ 10 Ex. A. Townsquare is

2

the owner and publisher of XXL magazine and its corresponding website, www.XXLMag.com ("XXL").  Compl. ¶ 7.

As is relevant here, on September 10, 2018, in an article entitled "Cardi B Partners With Tom Ford For New Lipstick Shade," XXL reported on a "heated" Instagram debate over Cardi B's new lipstick and Cardi B's own Instagram response to that debate (the "Article").[2]  Specifically, four days after Plaintiff photographed Cardi B at the Tom Ford fashion show, Cardi B and Tom Ford both announced on Instagram with matching Instagram posts that they had teamed up to create Cardi B's own shade of lipstick linked and excerpted below as follows:



---

[2] "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.  A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Pu v. Russell Publ'g Grp., Ltd.*, 2016 WL 9021990, at *4 (S.D.N.Y. Sept. 2, 2016) (Broderick, J.) (internal citations and quotation marks omitted), *aff'd*, 683 F. App'x 96 (2d Cir. 2017).  Plaintiff incorporates by reference, and relies on in bringing her claim, the Article as published by Townsquare that included the use of her Photograph in the Cardi B Post.  Compl. ¶ 13 Ex. B.  For the Court's convenience, the full Article, as it appeared before Plaintiff brought suit, is attached as Exhibit C to the Declaration of Rachel Strom dated August 9, 2019 ("Strom Decl.").

3

Cardi B captioned her post "Thank you so much @tomford and @tomfordbeauty!!! So excited for this and what's to come!!"

But, as XXL also reported, "the decision to name a lipstick after Cardi following the New York Fashion Week incident [where Cardi B allegedly got into a fight with rapper Nicki Minaj] has led to a heated debate on the original Instagram post. While some fans were excited about the upcoming product, others felt that Cardi doesn't deserve to have a lipstick named after her." Strom Decl. ¶ 4, Ex. C (p.2). In response to the "heated debate," and to announce that the lipstick quickly sold out, Cardi B posted another Instagram post (the "Post") with the heading: "Cardi B's Tom Ford Lipstick Has Already SOLD OUT !!!". The Post included a photograph of her lipstick with a "TF" (Tom Ford) mark – which Plaintiff does not claim to have taken, as well as a portion of the Photograph Plaintiff claims she took of Cardi B waving goodbye. Cardi B captioned the Post "Sorry./…" The Cardi B Post is still available on Cardi B's Instagram page, still containing the photograph at issue in this case.[3]

Commenting on the Instagram debate and Cardi B's Instagram Post, XXL embedded Cardi B's Post in its Article, noting that "Cardi doesn't seemed [sic] to [sic] bothered by that [debate over her lipstick]." Thus, Townsquare embedded the Post not to feature a photograph of Cardi B at the fashion event (of which Plaintiff correctly notes there were many readily available [Compl. Ex. B]), but to transparently convey, in Cardi B's chosen format, her unfiltered public response to the debate over her collaboration with Tom Ford and to note that her new lipstick line was an immediate success. *See* Strom Dec. ¶ 4, Ex. C.

---

[3] The Article, attached to the Strom Declaration as Exhibit C, contains a working hyperlink to the embedded Cardi B Instagram Post, which is available at https://www.instagram.com/p/BniKpoJBlpp/?utm_source=ig_embed.

4

Since Plaintiff has acknowledged that Townsquare "is in the business of news reporting," (Compl. ¶ 9), and the Article was reporting on this Instagram debate, there should have been no question that Townsquare's "use" of the Photograph in the context of the Cardi B's Post was a protected fair use. Nevertheless, on May 29, 2019, Plaintiff filed her initial complaint in this action alleging a single claim for copyright infringement of the Photograph. Dkt. No. 1. Townsquare answered the complaint on June 26, 2019, generally denying the material allegations of the compliant and asserting numerous affirmative defenses, including one sounding in fair use. Dkt. No. 10. Plaintiff then filed an amended complaint on July 17, 2019 [Dkt. No. 11], which Townsquare answered on July 31, 2019. [Dkt. No. 12]. Townsquare now moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings seeking dismissal of the Amended Complaint as XXL's use of the Photograph, within the embedded Cardi B Post is a protected fair use.

## ARGUMENT

## XXL'S USE OF CARDI B'S POST IS A FAIR USE

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The applicable legal standard for a Rule 12(c) motion is the same as the standard applied to a motion to dismiss brought pursuant to Rule 12(b)(6). *Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, Plaintiff cannot state a copyright claim because XXL's use of the Photograph within Cardi B's Post is a fair use, as a matter of law.

5

While the Copyright Act grants copyright owners a bundle of certain exclusive rights, including the right "to reproduce the copyrighted work in copies," 17 U.S.C. § 106, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting . . . is not an infringement of copyright."  17 U.S.C. § 107.  Because "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts,'" the copyright laws assure "authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991) (quoting U.S. Const. art. I, § 8, cl. 8 and citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556-57 (1985)).  As the Second Circuit has observed, the fair use doctrine protects "the ability of authors, artists, and the rest of us to express them– or ourselves by reference to the works of others, which must be protected up to a point." *Blanch v. Koons*, 467 F.3d 244, 249-50 (2d Cir. 2006).  In other words, the fair use defense allows for the use of copyrighted material in a reasonable manner for the purpose of disseminating information without the copyright owner's consent.  *See Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013).

Section 107 of the Copyright Act sets forth four non-exclusive factors that courts must consider in determining whether a particular use of a copyrighted work is a fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. These four factors must be considered together, and none may be "treated in isolation." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). The four factors are non-exclusive and "[a]lthough defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004) (internal citation omitted).

"Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 504-05 (S.D.N.Y. 2017) (citing *Arrow Prods., LTD. v. Weinstein Co.*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014) ("discovery would not provide any additional relevant information in this inquiry" because "[a]ll that is necessary for the court to make a determination as to fair use are the two films at issue")), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 86 (2d Cir. 2014) (affirming district court's pre-discovery fair use ruling and noting that the "discovery [plaintiff] seeks would not alter our analysis"); *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("[T]his court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim."); *Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ("Courts in this Circuit have resolved motions to dismiss on fair use grounds in this way: comparing the original work to an alleged parody, in light of applicable law.").

This is precisely the type of case where dismissal is warranted at the outset. The Complaint, together with the evidence attached thereto as exhibits or incorporated by reference, is all that is needed to decide the question of fair use. They show that XXL only used the portion of Plaintiff's Photograph as it was used within a larger social media post by Cardi B. And,

7

Townsquare only did so for the purpose of transformative news reporting and commentary: to inform its readers about a celebrity's social media response to a social media debate. As a result, Townsquare is entitled to judgment on the pleadings since any use here was a fair one.

### A. The Purpose and Character of XXL's Use Favors a Finding of Fair Use

Considered by courts to be the "heart of the fair use inquiry," the first factor requires the Court to examine the "purpose and character of the use." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001). The primary focus of the first fair use factor is "whether and to what extent the new work is transformative," *Cariou*, 714 F.3d at 705-06 (*quoting Campbell*, 510 U.S. at 579), meaning whether the new use "communicates something new and different from the original, or expands its utility." *Authors Guild v. Google Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). As the *Campbell* Court observed, "transformative works . . . lie at the heart of the fair use doctrine's guarantee of breathing space . . . ." 510 U.S. at 579.

Particularly relevant to this inquiry is whether the use falls within the categories identified by Congress in § 107 – criticism, <u>comment</u>, <u>news reporting</u>, teaching, scholarship, and research – as these present the "most appropriate" circumstances for a finding of fair use. *TCA,* 839 F.3d at 179 (emphasis added). If the original work "is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—that is the very type of activity that the fair use doctrine intends to protect[.]" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.* 150 F.3d 132, 142 (2d Cir. 1998) (citation omitted). As such, copying is transformative if it "uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." *TCA*, 839 F.3d at 180.

Plaintiff concedes in the Amended Complaint that Townsquare "is in the business of news reporting" (Compl. ¶ 9) – the very activity the fair use doctrine seeks to protect. And, the

8

specific Article here is a prime example of a fair use because it transformed the purpose of Plaintiff's photograph. As the Second Circuit has explained, "the case for a fair use defense would be extremely strong" were a "news program" to use copyrighted works to comment upon their significance. *Ringgold v. Black Entm't Television, Inc*., 126 F.3d 70, 79 (2d Cir. 1997). That is what XXL did here. Here, it is Cardi B's Post itself that was newsworthy and it was Cardi B's Post that XXL sought to inform its readers about. XXL was not looking to show any random pictures of Cardi B – the types that Plaintiff correctly alleges are readily available. Compl. Ex. B. Rather, XXL wanted to report on Cardi B's cagey Instagram Post because that Post was Cardi B's newsworthy public response to the debate over her collaboration with Tom Ford and the success of that collaboration, notable events in the fashion and entertainment industries. XXL did not select the Photograph – Cardi B did. And it was Cardi B's inclusion of a portion of the Photograph – cheekily waving goodbye to her lipsticks that have sold out – within her Post that was newsworthy.

Courts in this and other jurisdictions likewise hold that when a photograph itself or, by extension, a social media post that incorporates a photograph as is the case here, becomes newsworthy, the news media may fairly depict it to report that story even if it is necessary to use the entire work. For example, in *Konangataa v. American Broadcasting Cos*., 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017), Judge Kaplan found on a motion to dismiss that a number of news outlets reporting on a publicly live-streamed Facebook video – which included using portions of that video – was a fair use. In doing so, the court noted that "[t]his was in each case a use squarely within the preambulatory portion of Section 107 of the Copyright Act, namely, criticism, comment, news reporting, which goes a significant part of the distance toward a conclusion of fair use. I believe the use was transformative." *Id.*

The First Circuit's reasoning in *Nuñez v. Caribbean International News Corp.*, 235 F.3d 18 (1st Cir. 2000) was similar. There, a newspaper reported on a beauty pageant winner who had appeared in nude modeling photos. To do so, the newspaper showed some of the photos for its readers to evaluate. The First Circuit held that it was a fair use to show the photos, because the existence of the pictures themselves was the newsworthy item. *Id.* at 22 ("[T]he pictures were the story. It would have been much more difficult to explain the controversy without reproducing the photographs." (internal quotation marks omitted)). Here too, XXL's Article "transform[ed] the work[] into news." *Nuñez*, 235 F.3d at 23. Townsquare wanted to tell its readers about the newsworthy event of Cardi B's response to a social media debate and the success of her lipstick line. In order to do so effectively, XXL was entitled to show the readers Cardi B's response, even if that response incorporated a portion of Plaintiff's Photograph.[4]

**B.      The Nature of the Copyrighted Work Supports a Fair Use Determination**

The second factor focuses on the level of creativity in the subject work as well as whether that work had previously been published and made available to the public prior to the allegedly infringing use. Here, Plaintiff's Photograph was already published by Cardi B, which supports a finding of fair use. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (holding

---

[4] It is well-established in the Second Circuit that a defendant's status as a for-profit enterprise is not a dispositive factor in evaluating the purpose and character of the defendant's use. *See Swatch*, 756 F.3d at 83 ("purposes such as . . . news reporting" are set forth in the Copyright Act as prototypical examples of fair use, 17 U.S.C. § 107, and the Second Circuit has "recognized that '[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit'") (citation omitted)). *See also Cariou*, 714 F.3d at 708 (although Richard Prince's artworks were sold commercially, "we do not place much significance on that fact due to the transformative nature of the work"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) (biography of Grateful Dead did not seek to exploit the plaintiff's images' expressive value for commercial gain); *New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 156 (2d Cir. 1990) ("To be sure, the author and appellant want to make a profit in publishing the book. But the author's use of material 'to enrich' his biography is protected fair use, 'notwithstanding that he and his publisher anticipate profits.'" (citation omitted)); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986) (Section 107(1) does not "requir[e] . . . a clear-cut choice between . . . 'commercial' and 'non-profit'"; "[w]ere that the case, fair use would be virtually obliterated, for '[a]ll publications presumably are operated for profit.'") (citation omitted)).

that second factor favored fair use because work was "a published work available to the general public"); *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 330 (S.D.N.Y. 2005) ("This circuit has mitigated the importance of creativity in the second factor where a work is a published work available to the general public" (citation and internal quotation marks omitted)), *aff'd sub nom. Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) (where work appeared on the Internet before a defendant copies it, this strengthens a finding of fair use).

Further, the Photograph was unquestionably taken to document its subject, Cardi B, attending the Tom Ford fashion event rather than to serve as an art piece. Its interest derives from its content, not its composition. This, too, supports a fair use finding here. *See North Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015) ("Courts analyzing . . . photographic works created for news gathering or other non-artistic purposes have found this factor to weigh in favor of fair use."); *Katz v. Chevaldina*, 2014 WL 2815496, at *8 (S.D. Fla. June 17, 2014) (where work at issue was a candid picture of a man at basketball practice and there was "no evidence that the photographer influenced, at all, the [subjects] activity, pose, expression or clothing" and the photograph conveyed no creative ideas, this factor weighed in favor of fair use), *aff'd*, *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (photo at issue was factual or informational because it was "merely a candid shot in a public setting").

But even assuming that the Photograph is a creative work, as opposed to one where the photographer exercised no artistic control over the process and merely documented the movement of a public figure at a public event, the second factor "may be of limited usefulness where [a] creative work of art is being used for a transformative purpose." *Cariou*, 714 F.3d at 710 (citation and internal quotation marks omitted). Townsquare's transformative use of a

11

paparazzi photo within a social media posting that had previously been published, for news reporting purposes, strongly supports a finding of fair use.

### C. The Amount and Substantiality of Townsquare's Use Weighs in Favor of Fair Use

The third factor – the amount and substantiality of the portion of the copyrighted material used in relation to the copyrighted work as a whole – also favors a finding of fair use. The operative question is whether "the quantity and value of the materials used, are reasonable in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257 (citation and internal quotation marks omitted); *Campbell*, 510 U.S. at 586-87 ("[T]he extent of permissible copying varies with the purpose and character of the use.").

"As the Second Circuit has noted, there are no absolute rules as to how much of a copyrighted work may be copied and still be considered a fair use." *Pirro*, 74 F. Supp. 3d at 620-21 (citing *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014)). "[T]he extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87. Indeed, for some purposes, it may be necessary to copy the entire copyrighted work, and the third factor would not weigh against a finding of fair use in such circumstances. *HathiTrust*, 755 F.3d at 98; *see, e.g.*, *Bill Graham Archives*, 448 F.3d at 613. "The crux of the inquiry is whether 'no more was taken than necessary.'" *HathiTrust*, 755 F.3d at 98 (quoting *Campbell*, 510 U.S. at 589). Moreover, this factor "weighs less when considering a photograph – where all or most of the work often must be used in order to preserve any meaning at all – than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007).

Here, Townsquare used only the cropped portion of the Photograph that was first published by Cardi B in her Instagram post. That was the precise amount that was necessary to

fully inform XXL's readers about Cardi B's newsworthy posting. The third factor, therefore, also weighs in favor of fair use.

> D. **The Effect of Townsquare's Use on the Photograph's Market Value Decisively Favors Fair Use**

The fourth factor focuses "on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 223. This consideration, which has been described by the Supreme Court as "undoubtedly the single most important element of fair use," *Harper & Row*, 471 U.S. at 566, decisively favors fair use here.

The relevant inquiry is whether the secondary use "usurps the market of the original work." *Blanch*, 467 F.3d at 258 (citation omitted). Infringers usurp the market for copyrighted works when the infringer's target audience and the infringing content are the same as the original. *Cariou*, 714 F.3d at 709. Courts must also consider the harm to derivative markets for a copyrighted work, such as a market for licensing revenues. *TCA*, 839 F.3d at 186. Whether the secondary use is transformative is important to the usurpation analysis, as "[t]he more transformative [the secondary use], the less likel[y] that [it] substitutes for the original." *Cariou*, 714 F.3d at 709 (citation omitted, alterations added). Where, as here, a use is transformative, courts have consistently held that the copyright owner "does not suffer market harm due to the loss of license fees." *Bill Graham Archives*, 448 F.3d at 615. Moreover, focusing on potential lost license fees would, in any event, ignore the obvious point that a copyright plaintiff "is not entitled to a licensing fee for a work that otherwise qualifies for the fair use defense." *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116-17 (2d Cir. 1998).

13

Here, the Article's use of a low resolution, partially-cropped version of the Photograph within a social media posting by Cardi B was not a market substitute for the Photograph. Presumably, Plaintiff licenses high resolution copies of the Photograph – like all of the examples she attached as Exhibit B to the Complaint –and that opportunity still exists.  As such, a determination of fair use is warranted since Townsquare made only a transformative use of the Photograph after it had already become widespread as a result of Cardi B's Post.

## CONCLUSION

For all of the foregoing reasons, Townsquare respectfully requests that the Court: (1) grant its motion for judgment on the pleadings, (2) dismiss the Amended Complaint in its entirety with prejudice and (3) award Defendant its attorneys' fees and costs as prevailing parties pursuant to 17 U.S.C. § 505.


DATED:  August 9, 2019                                         Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**

By:   /s/Rachel F. Strom_____
Rachel F. Strom
James E. Doherty
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
Phone:  (212) 489-8230
Fax:  (212) 489-8340
RachelStrom@dwt.com
JimDoherty@dwt.com

*Counsel for Defendant*
*Townsquare Media, Inc.*

14