UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REBECCA FAY WALSH,

       Plaintiff,

 - against -

TOWNSQUARE MEDIA, INC.

       Defendant.

Case No. 1:19-cv-04958 (VSB)

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................................... 1

UNCONTROVERTED FACTS ...................................................................................................... 2

LEGAL STANDARD ..................................................................................................................... 4

<u>ARGUMENT</u>: THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW .......................... 6

   A.   THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE .................................................. 7

    *(1)   Defendant's Secondary Use is NOT Transformative* ...................................................... 7

      (a)   The Newsworthiness of the Photograph is Not Dispositive ....................................... 8

      (b)   Defendant's Infringing Article Does Not Report on Any Controversy that Arose Because of the Photograph Itself ............................................................................. 9

      (c)   Defendant Has Not Transformed the Original Intended Use of the Photograph; Nor Altered Its Meaning ........................................................................................ 13

    *(2)   Defendant's Use is Commercial Rather Than Non-Profit* ........................................ 14

   B.   THE SECOND FACTOR WEIGHS AGAINST FAIR USE ........................................................ 14

   C.   THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT'S EXPLOITATION OF THE PHOTOGRAPH WAS WHOLLY UNNECESSARY .......................... 15

   D.   THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET ............................... 17

CONCLUSION ............................................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

## <u>C</u>ases

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe,*
   131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015) .................................................. 5

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110, 120 (2d Cir. 2010) ............................................................................ 5

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009) ........................................................................................ 4

*Associated Press v. Meltwater U.S. Holdings,*
   931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) .......................................................... passim

*Barcroft Media, Ltd. v. Coed Media Group, LLC,*
   No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) ............................ passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ........................................................................................ 4

*Blanch v. Koons,*
   467 F.3d 244, 251 (2d Cir. 2006) ...................................................................... 7, 14

*Brownmark Films, LLC v. Comedy Partners,*
   682 F.3d 687, 692 (7th Cir. 2012) ........................................................................... 6

*BWP Media USA, Inc. v. Gossip Cop Media, LLC,*
   87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) ............................................................... 5

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
   902 F.2d 829, 845 (11th Cir.1990) ......................................................................... 18

*Campbell v. Acuff– Rose Music, Inc.,*
   510 U.S. 569, 579 (1994) .................................................................................. passim

*Cariou v. Prince,*
   714 F.3d 694, 707 (2d Cir. 2013) ........................................................................... 6

*Cleveland v. Caplaw Enters.,*
   448 F.3d 518, 521 (2d Cir.2006) ............................................................................ 5

*Famous Horse Inc. v. 5th Ave. Photo Inc.,*
   624 F.3d 106, 108 (2d Cir. 2010) ........................................................................... 4

CASES (continued…)

*Ferdman v. CBS Interactive, Inc.*,
   17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018) ........................... 10, 17

*Fitzgerald v. CBS Broad., Inc.*,
   491 F.Supp.2d 177, 185 (D.Mass.2007) ........................................................................... 13, 18

*Harper & Row v. Nation Enterprises*,
   471 U.S. 539, 557 (1985) ..................................................................................................... passim

*Hirsch v. CBS Broad. Inc.*,
   No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *6 (S.D.N.Y. Aug. 4, 2017) ......................... 5

*Hirsch v. Complex Media, Inc.*,
   No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) .......... passim

*Hogan v. Fischer*,
   738 F.3d 509, 514–15 (2d Cir. 2013) ........................................................................................ 5

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104, 108 & n. 2 (2d Cir. 1998) .................................................................................. 13

*Kelly-Brown v. Winfrey*,
   717 F.3d 295, 308 (2d Cir. 2013) .............................................................................................. 5

*Kienitz v. Sconnie Nation LLC*,
   766 F.3d 756, 759 (7th Cir. 2014) ........................................................................................... 16

*Konangataa v. Am. Broadcasting Companies, Inc.*,
   No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ......................... 9

*LaChapelle v. Fenty*,
   812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) ............................................................................... 5

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395, 403 (2d Cir. 2014) .............................................................................................. 4

*Monge v. Maya Magazine, Inc.*,
   688 F.3d 1164, 1170 (9th Cir. 2012) .................................................................................... 6, 15

*Monster Communications, Inc. v. Turner Broadcasting*,
   935 F.Supp. 490, 494 (S.D.N.Y. 1996) .................................................................................... 15

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295, 307 (3d Cir. 2011) ........................................................................................... 8, 9

<u>C</u>ASES (continued…)

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18, 25 (1st Cir. 2000) ................................................................................ 9

*NXIVM Corp. v. Ross Inst.*, 3
   64 F.3d 471, 478 (2d Cir. 2004) ............................................................................ 7

*Otto v. Hearst Commc'ns, Inc.*,
   345 F. Supp. 3d 412, 428 (S.D.N.Y. 2018) .................................................... passim

*Psihoyos v. National Examiner*,
   97-cv-7625 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) .............. passim

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*,
   10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) .............................................................. 14

*Ringgold v. Black Entertainment Television, Inc.*,
   126 F.3d 70, 79 (2d Cir. 1997) ....................................................................... 7, 17

*Rogers v. Koons*,
   960 F.2d 301, 311 (2d Cir. 1992) ........................................................................ 16

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417, 450 (1984) .................................................................................... 17

*Strauss v. Hearst Corp.*,
   No.1988 WL 18932, *5 (S.D.N.Y. Feb. 19, 1988) ................................................ 15

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
   756 F.3d 73, 85 (2d Cir. 2014) ........................................................................ 5, 8

<u>S</u>TATUTES

17 U.S.C. § 107 ............................................................................................... passim

## PRELIMINARY STATEMENT

This is a copyright infringement action involving a major media company's unauthorized use of a copyrighted photograph of celebrity rapper Cardi B.

Plaintiff Rebecca Fay Walsh ("Plaintiff" or "Walsh") is a New York-based photographer who captured an iconic image of Cardi B at a prestigious fashion show (the "Photograph"). Defendant Townsquare Media, Inc. ("Defendant" or "Townsquare") is a largescale news publisher which has been sued for copyright infringement a staggering 18 times in the last three years alone.  Having been caught yet once again exploiting copyrights without first obtaining permission from rights holders, Defendant has interposed the defense of fair use under 17 U.S.C. §107.

As demonstrated herein, Defendant's use of the Photograph was not transformative because Defendant did not report on any political or social controversy that arose because of the very existence of the Photograph itself.  Nor did the infringing article transform the original purpose of use or message behind the Photograph.  Defendant merely used the Photograph of Cardi B to illustrate a news story about the subject matter depicted in the Photograph: Cardi B.  Indeed, after this lawsuit was filed, Defendant merely substituted the Photograph with another image of Cardi B, thereby demonstrating that the Photograph was not integral to Defendant's article or message. [Am. Compl., Ex D., Dkt. # 11-4]

Defendant's argument that there was a "heated debate" surrounding whether Cardi B was qualified to market a lipstick product under her brandname is of no consequence here because the Photograph itself was not subject to any controversy.  As further discussed below, to qualify for fair use news reporting, the controversy at issue must surround the actual copyrighted work itself, not just the subject matter depicted by the copyrighted work.

## <u>UNCONTROVERTED FACTS</u>

**<u>Plaintiff Rebecca Fay Walsh</u>**

Walsh is a professional photographer in the business of licensing her photographs to online and print media for a fee [Amended Complaint, Dkt. #11 ("Am. Compl.") ¶ 5]

**<u>Defendant Townsquare Media, Inc.</u>**

Townsquare is a largescale, for-profit media company which disseminates news content. [Am. Compl. ¶¶ 8-9]  Townsquare owns and operates a website at the URL:

[www.XXLMag.com](www.XXLMag.com). [Am. Compl. ¶ 7]

**<u>The Photograph of Cardi B – September 5, 2018</u>**

On or about September 5, 2018, Walsh photographed celebrity rapper Cardi B at the Tom Ford fashion show in New York City (the "Photograph").  [Am. Compl., ¶ 10, Ex. A]  Walsh is the author of the Photograph and has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto. [Am. Compl., ¶ 11]

The Photograph was registered with United States Copyright Office and was given Copyright Registration Number VA 2-132-901, with effective date of September 11, 2018. [Am. Compl., ¶ 12]

**<u>Defendant's Unauthorized Publication of the Photograph – September 10, 2018</u>**

On September 10, 2018, Townsquare published an article on the Website entitled *Cardi B Partners with Tom Ford for New Lipstick Shade*.  (the "Infringing Article"). [Am. Compl., ¶ 13, Ex. B]  Townsquare did not license the Photograph from Plaintiff for its article, nor did Townsquare have Plaintiff's permission or consent to publish the Photograph on its Website. [Am. Compl., ¶ 14]

At the time Defendant expropriated the Photograph without Plaintiff's authorization, numerous photographs of Cardi B appearing at the Tom Ford fashion show were made available for license through Getty Images, a stock photography agency ("Getty").  [Am Compl. ¶ 15, Ex. C]   Rather than license the Photograph from Plaintiff, or license alternative images of Cardi B from third-party Getty, Defendant expropriated the Photograph from a social media account to save itself the time and expense of legally procuring the Photograph through the appropriate channels. [Am Compl. ¶ 16]

After this lawsuit was filed, Defendant took down the Photograph and substituted it with another image of Cardi B which was licensed through Getty, demonstrating that Defendant's unauthorized use of the Photograph in the first instance was not integral to the message it sought to convey. [Am Compl. ¶ 17]

The text of the Infringing Article reads in its entirety:

**"Cardi B Partners With Tom Ford for New Lipstick Shade"**

Cardi B is having a busy 2018 New York Fashion Week. After allegedly getting into a fight with Nicki Minaj the Invasion of Privacy rapper is now getting her own shade of lipstick from Tom Ford.

The Tom Ford Beauty brand broke the news on Sunday (Sept. 9), posting an image of the bold blue shade and Cardi's name on Instagram." Meet Cardi.# TFBOYSANDGIR#LTSF LIP# TOMFORDBEAUTY," the caption of the post reads.

Cardi also celebrated the news on IG, re-posting the Tom Ford post and adding, "Thank you so much @tomford and @tomfordbeatuy!!! So excited for this and what's to come."

Just the latest shade in Tom Ford's Lips & Boys collection, the new Cardi shade follows the brand's trend of naming lipsticks after other celebrities such as Julianne [Moore], Dakota [Johnson] and Naomi [Campbell]. There's no word yet when the lipstick inspired by Cardi will be released.

3

As expected, the decision to name a lipstick after Cardi following the New York Fashion Week incident has led to a heated debate on the original Instagram post. While some fans were excited about the upcoming product, other's felt that Cardi doesn't deserve to have a lipstick named after her.

But Cardi doesn't seemed to bothered by that. In another Instagram post, the rapper claimed the upcoming lipstick has already sold out, adding, "Sorry :/....."

In footage from the fight, the "Be Careful" rapper can be seen throwing a shoe in the direction of someone, although it's hard to make out if it's actually Minaj. Cardi can also be heard yelling at someone for talking about her daughter, Kulture. "Write some shit about my daughter again," Cardi says.

While it was reported that Bardi's fight was with the *Queen* artist, Cardi reportedly ended up fighting former *Love & Hip Hop: New York* star Rah Ali.

Check out the TomFord Instagram post below.

[Dkt. #11-4]

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). "[T]he complaint's [f]actual allegations must be enough to raise a right to relief above the speculative

level, i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120

(2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted).

"The determination of fair use is a mixed question of fact and law." *Swatch Grp. Mgmt.*

*Servs. Ltd. V. Bloomberg L.P.,* 756 F.3d 73, 81 (2d Cir. 2014).  It is an "open-ended and context-

sensitive inquiry" that is "fact-driven[ ]" *LaChapelle v. Fenty,* 812 F. Supp. 2d 434, 442

(S.D.N.Y. 2011); *see also Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994) ("the

[fair use] statute, like the doctrine it recognizes, calls for case-by-case analysis").  In rebutting a

defendant's fair use argument on a Rule 12(b)(6) motion, a plaintiff is "held only to the usual

burden of a motion to dismiss . . . which is to say [he] must plead sufficient facts to plausibly

suggest that they are entitled to relief." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir.

2013).

"Because fair use is an affirmative defense, it often requires consideration of facts outside

of the complaint and thus is inappropriate to resolve on a motion to dismiss."  *Id.*; *see A.V.E.L.A.,*

*Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015).  Indeed,

"there is a dearth of cases granting such a motion." *BWP Media USA, Inc. v. Gossip Cop Media,*

*LLC,* 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) ("*Gossip Cop*"); *see also Hirsch v. CBS Broad.*

*Inc.*, No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *6 (S.D.N.Y. Aug. 4, 2017) (denying

motion to dismiss on the issue of fair use as premature).[1]

Defendant argues that the determination of fair use can be decided solely on the basis of a

"side-by-side comparison" between the original work and the allegedly infringing work.  [D's

---

[1] "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as
that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738
F.3d 509, 514–15 (2d Cir. 2013) (quoting *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d
Cir.2006)).

Memo, Dkt. #15, p. 12 of 19]  However, in the rare case where a motion directed to the pleadings has been granted on the basis of fair use, the work at issue is either a parody, see *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012), or art appropriation, see *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).

Defendant has not cited any case where a district court granted a motion to dismiss on fair use involving the use of a photograph in a news report.  In any event, a side-by-side comparison of the original work with the Infringing Article conclusively demonstrates that the fair use defense is foreclosed as a matter of law.

## ARGUMENT

### THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW

Fair use is an affirmative defense that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendants use was fair." *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).  A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work."  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985) (underline added).

Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use.  These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  As set forth below, examination of these factors demonstrates that Defendant's use of the Photograph does not constitute fair use.

6

**A.      THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE**

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). Courts within the Second Circuit examine at least two sub-factors to determine the purpose and character of use, including whether the secondary use is (1) transformative; and (2) for commercial purposes. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

**(1)      Defendant's Secondary Use is NOT Transformative**

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The central purpose of the inquiry is to determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

As demonstrated below, Defendant's use was not transformative because Defendant did not report on any political or social controversy that arose because of the very existence of the Photograph itself. Nor did the Infringing Article transform the original purpose of use or message behind the Photograph. Defendant merely used the Photograph of Cardi B to illustrate a news story about the subject matter depicted in the Photograph: Cardi B. Indeed, after this lawsuit was filed, Defendant merely substituted the Photograph with another image of Cardi B, thereby demonstrating that the Photograph was not integral to Defendant's article or message. [Am. Compl., Ex D., Dkt. # 11-4]

7

Defendant's argument that there was a "heated debate" surrounding whether Cardi B was qualified to market a lipstick product under her brandname is of no consequence here because the Photograph itself was not subject to any controversy. As further discussed below, the controversy at issue must surround the actual copyrighted work, not just the subject matter depicted by the copyrighted work.

### (a) The Newsworthiness of the Photograph is <u>Not</u> Dispositive

Defendant argues that its use of the Photograph is fair because it was contained within a news report. [D's Memo, Dkt. # 15, p. 13 of 19] The preamble to the fair use statute does list "news reporting" as an illustrative basis supporting fair use under this factor. 17 U.S.C. § 107. However, as per the Supreme Court, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985); *accord Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy.").[2]

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017), the court explained that the preferential treatment accorded to "news reporting" under the preamble to Section 107 only applies to news reporting of the copyrighted work itself; <u>not</u> news reporting about the subject matter depicted in the image. *Barcroft,* 2017 WL 5032993 at *6 ("CMG is correct in noting that the preamble of Section

---

[2] *See also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

107 carves out categories of reproduction that are likely to constitute fair use, but it is incorrect in asserting that its use of the Images fell within one of those categories. Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.") (italics added).[3]

### (b)    *Defendant's Infringing Article Does Not Report on Any Controversy that Arose Because of the Photograph Itself*

In the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft*, 2017 WL 5032993, at *6. Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the political controversy surrounding the existence of the photographs and their impact on the beauty queen's qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (fair use found where publishers reported on social controversy surrounding a father's lack of discretion in posting a live-streaming video that graphically depicted the birth of his child)).[4]

---

[3] *Accord Gossip Cop*, 196 F. Supp. 3d at 406 n.6 ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which the contents of the photograph are of some public interest . . . ); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative.").

[4] The reason why *Nunez* and *Konangataa* constitute fair use is because the media publisher in each case reported on a political or social controversy that arose because of the copyrighted photograph. *Accord Otto*, 345 F.Supp.3d at 428; *Murphy,* 650 F.3d at 307 ("[H]ad the [i]mage itself become controversial due to its 'salacious' content, it would likely have been fair use for a newspaper to reproduce it to accompany an article about the controversy").

In contrast, no transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subjects described in the news article.  *See, e,g.*, *Barcroft,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law."); *Gossip Cop*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos v. National Examiner*, 97-cv-7625 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 428 (S.D.N.Y. 2018) ("Otto") ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District."); *Ferdman v. CBS Interactive, Inc.,* 17-cv-1317 (PGG), 2018 WL 4572241, at *12 (S.D.N.Y. Sept. 21, 2018) (the "Article did not provide commentary about the photographs used other than the fact they existed . . . . In other words, the . . . Article involves the use of an image solely to present the content of that image.  Such a use is not transformative") (internal quotations and citations omitted);

Here, like the cases in *Otto*, *Barcroft*, *Gossip Cop, Ferdman* and *Psihoyos* where fair use was rejected, Defendant here used the Photograph to merely illustrate a news story about the subject matter depicted in the image: Cardi B.  On its face, Defendant's Infringing Article does

nothing more than describe how Cardi B partnered with Tom Ford to introduce a new lipstick shade.  Indeed, the text of the article, which includes 312 words, is entirely *descriptive* in nature. Defendant has not commented on the Photograph of Cardi B, has not criticized the Photograph of Cardi B, and has no taken no position on Cardi B's decision to market the lipstick along with Tom Ford.

The only passing reference to a so-called "heated debate" concerns whether Cardi B deserved to have a lipstick named after her.  But even if such debate existed, it has nothing to do with Defendant's use of a copyrighted Photograph.  Defendant could have reported on such alleged debate using ANY photograph of Cardi B.   It didn't need Plaintiff's Photograph.

Moreover, the Court should query: does a trivial debate over whether Cardi B deserves to market a lipstick in her own tradename rise to the level of political or social controversy that warrants the suspension of the exclusive rights granted to copyright holders under section 106 of the Act?  Plaintiff contends not.  If the Court were to accept Defendant's argument that any trivial debate on social media involving a celebrity's commercial product line grants publishers an unfettered right to expropriate photographs of that celebrity, there would be no copyright protection for any photograph of a celebrity.  The bottom line is that Defendant used the Photograph to show what it depicts: Cardi B at Tom Ford's fashion show.

Defendant's reliance on *Konangataa* is entirely misplaced.  In *Konangataa*, news outlets reported on a Facebook video of a woman giving birth and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal.  *Konangataa,* 2017 WL 2684067 at *1.  The various news outlets in *Konangataa* were not displaying the video of the woman giving birth in order to report the fact of the birth.  Rather, the video was displayed in order to comment on the controversy surrounding the father's lack of

discretion for posting the video to social media in the first place.  In other words, the video itself – rather than the fact of the child's birth as depicted in the video – was the target of news reporting.

Here, in contrast to *Konangataa*, Defendant did not use Plaintiff's Photograph to report on some controversy surrounding the very existence of the Photograph itself.  Rather, Defendant simply used the Photograph to report on the content and subject matter depicted in the Photograph.  Accordingly, there can be no transformative effect.

Likewise, in *Nunez*, the photographs themselves were the subject of the public controversy.  Scantily clad photographs of Miss Puerto Rico Universe surfaced after the beauty queen was awarded the crown.  The First Circuit held that the defendant-newspaper was privileged to publish the salacious photographs to comment on the controversy surrounding whether <u>the very existence of the photographs</u> disqualified the beauty queen from retaining her crown.  *Nunez*, 235 F.3d at 25.

Unlike the cases in *Nunez* and *Konangataa,* where the publishers reported on a public controversy sparked by the very existence of the images, Defendant here failed to offer any commentary or criticism directed at the copyrighted work at issue.  The Infringing Article merely reports on what the Photograph depicts and does not address any controversy surrounding the very existence of the Photograph.  To the extent any controversy existed at all (and Plaintiff avers that there was none), such debate was limited to whether Cardi B deserved to market a lipstick.  Indeed, as illustrated by Defendant's revised publication of the article [Dkt. #11-4], <u>any</u> photograph of Cardi B would have served Defendant's news reporting purpose in the exact same manner.  Accordingly, there can be no transformative effect as a matter of law.

**(c)      Defendant Has <u>Not</u> Transformed the Original Intended Use of the Photograph; Nor Altered Its Meaning**

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6; *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created"); *see also Fitzgerald v. CBS Broad., Inc.*, 491 F.Supp.2d 177, 185 (D.Mass.2007) (finding a news outlet's use of a photojournalist's image of an arrest for the purpose of reporting on that arrest not transformative, as it used the photograph for the precise reason it was created).

Here, the Photograph depicts Cardi B at Tom Ford's fashion show.  Plaintiff created the Photograph for the purpose of licensing to news outlets and media organizations. Likewise, the Infringing Article used the Photograph for the same exact purpose: a news report about Cardi B at Tom Ford's fashion show.  As such, Defendant did not transform the original meaning behind the Photograph.  *See Otto,* 345 F.Supp.3d at 426 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself.").

**(2)      Defendant's Use is Commercial Rather Than Non-Profit**

The fact that Defendant used the Photograph for a commercial rather than a non-profit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price."  *Harper & Row*, 471 U.S. at 562.

Here, there can be no dispute that Defendant is a for-profit publisher which disseminates commercial news content on its website.  [Am Compl. ¶¶ 7-9]  Moreover, commercial advertisements appeared adjacent to the Photograph as it was displayed on the Website, thereby evincing Defendant's intent to exploit Plaintiff's work.  *See, e.g., Hirsch v. Complex Media,* 2018 WL 6985227 at *6  (finding that commercial advertisements appearing alongside the unauthorized use of photograph demonstrated a defendant's commercial purpose); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (same).  Accordingly, Defendant sought to profit from Plaintiff's copyright without paying the customary price.  This sub-factor weighs against fair use.

**B.      THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2).  Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished."  *Blanch*, 467 F.3d at 256.  "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations."  *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).  s*ee also Baraban v. Time Warner, Inc.,* 2000 WL 358375 at *4 (S.D.N.Y. 2000) ("Although

photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs."); *Strauss v. Hearst Corp.*, No.1988 WL 18932, *5 (S.D.N.Y. Feb. 19, 1988) (rejecting fair use defense where "[p]laintiff's efforts to create an aesthetically attractive, technically competent photograph were plainly creative expressions"); *Monge*, 688 F.3d at 1177 ("Simply because a photo documents an event does not turn a pictorial representation into a factual recitation.").

Here, the Photograph is creative in nature as it is the product of a professional photographer with many years experience in licensing her photographs to the media. [Am Compl. ¶ 5]  Moreover, in creating the Photograph, Walsh exercised a personal and creative choice in the selection of camera equipment, lens, perspective, angle, lighting and exposure. Walsh's original take on the subject matter renders the image "as creative and deserving of protection as purely fanciful creations." *Monster Comm.*, 935 F.Supp. at 494.  Accordingly, the second factor weighs against fair use.

**C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT'S EXPLOITATION OF THE PHOTOGRAPH WAS WHOLLY UNNECESSARY**

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying."  *Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression.  *NXIVM Corp.*, 364 F.3d at 480 (citation omitted).  The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary.  *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair."  *Id.* at 109.

As a quantitative matter, Defendant has taken the heart of the full-color Photograph. This fact alone weighs against fair use. *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use"). While Defendant argues that the Photograph was cropped, the face and body of the celebrity is shown full-scale.

As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting. *See Rogers v. Koons*, 960 F.2d 301, 311 (2d Cir. 1992). The Photograph was reproduced by Defendant without any visible modification or alteration. Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the works' qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

Moreover, Defendant's copying of the Photograph was <u>unnecessary</u> to achieve Defendant's news reporting purpose. As noted by Judge Easterbrook in *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014), "[t]he fair-use privilege under § 107 is not designed to protect lazy appropriators." In this case, there were at least three legal alternatives available to Defendant which did <u>not</u> include the "lazy appropriation" of Plaintiff's work: (1) Defendant could have published its news story about Cardi B *without* any photograph whatsoever; (2) Defendant could have commissioned its own photographer to create an original work depicting Cardi B; or (3) Defendant could have obtained a license directly from Plaintiff.

Indeed, at all times relevant hereto, Defendant had the resources at its disposal to commission its own photographer to attend the Tom Ford fashion show and capture a photograph

of Cardi B.  Defendant also had the resources to license an image of Cardi B, as she appeared at

the very same Tom Ford fashion show, from Getty Images.  Defendant failed to do so.  Instead, it

sought to free-ride off Plaintiff's copyright and generate advertising revenue by exploiting

Plaintiff's work without her authorization.

**D.      THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or

value of the copyrighted work." 17 U.S.C. § 107(4).[5]  As demonstrated below, Defendant's

secondary use impaired both the actual and potential market for the Photograph.

As a threshold matter, the Court may presume market harm because Defendant's

secondary use constituted a mere duplication of Walsh's original photograph.  *See Sony Corp.*

*of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every

commercial use of copyrighted material is presumptively an unfair exploitation of the

monopoly privilege that belongs to the owner of the copyright").  "A presumption of market

harm "makes common sense[ ] when a commercial use amounts to mere duplication of the

entirety of an original." *Campbell*, 510 U.S. at 591.[6]

Defendant's secondary use impairs the actual market for the Photograph because there

was a fully functioning market demand for Plaintiff's work.  *See Associated Pres*s, 931

F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the

---

[5] This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

[6] Further, under *Sony,* "there is a presumption of market harm [where] Defendant's use of [] photographs were not transformative." *Ferdman v. CBS Interactive*, 2018 WL 4572241 at *19.  Here, because Defendant's use constituted a mere duplication of Plaintiff's unaltered Photograph and was wholly untransformative, *Sony's* presumption of market harm applies.

copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (*citing Harper & Row*, 471 U.S. at 566 n. 9).

Defendant's unauthorized use clearly supplanted the market in which Walsh had a reasonable expectation to earn licensing revenue. *See, e.g., Fitzgerald*, 491 F.Supp.2d at 189 ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outfits"); *Otto*, 345 F. Supp. 3d at 432 ("Publishing the Photograph without permission essentially destroys the primary market for its use."). Defendant's secondary use also impairs the potential market for the Photograph because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted).[7]

In sum, all four factors weigh heavily against fair use.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings should be DENIED in its entirety.

Respectfully Submitted,
LIEBOWITZ LAW FIRM, PLLC

by: **/richardliebowitz/**
Richard Liebowitz
James H. Freeman

---

[7] "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990); *see also Otto* at *12 ("Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work - simply put, more supply, less demand.  If the practice of using photographs without licensing were to become widespread, 'the market for such images would diminish correspondingly: [i]f media outlets could use such images for free, there would be little or no reason to pay for works.'  *Barcroft*, 297 F.Supp.3d at 355.")

11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

*Counsel for Plaintiff*