```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
REBECCA FAY WALSH,                                          :
                                                            :
                              Plaintiff,                    :
                                                            :       19-CV-4958 (VSB)
              - against -                                   :
                                                            :       **OPINION & ORDER**
                                                            :
TOWNSQUARE MEDIA, INC.,                                     :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

Appearances:

Richard Liebowitz
Liebowitz Law Firm, PLLC
Valley Stream, New York
*Counsel for Plaintiff*

Rachel F. Strom
James E. Doherty
Davis Wright Tremaine LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

     Plaintiff Rebecca Fay Walsh brings this action against Townsquare Media, Inc., asserting a claim of copyright infringement in connection with Defendant's unlicensed publication in an online article (the "Article") of a copyrighted photograph (the "Photograph") taken by Plaintiff. Before me is Defendant's motion for judgment on the pleadings. Because Defendant's publication of the Photograph constituted fair use, Defendant's motion for judgment on the pleadings is GRANTED.

I. **Factual Background**[1]

Plaintiff is a Brooklyn-based professional photographer who licenses her photographs to online and print media for a fee. (Am. Compl. ¶ 5.)[2]  Defendant is a Delaware-incorporated business that owns and operates an online website called XXL Mag ("XXL"), located at the URL www.XXLMag.com. (*Id.* ¶¶ 6–7.)

On September 5, 2018, Plaintiff photographed rapper and celebrity Cardi B at a Tom Ford Fashion show in New York City. (*Id.* ¶ 10.)  At around the time of the fashion show, she captured numerous photographs of Cardi B, and then made them available for license through Getty Images, a stock photography agency. (*Id.* ¶ 15; *id.* Ex. C).  Among those photographs is the one at issue in this action, reproduced below in resized but uncropped form:

---

[1] The following facts are taken from the Amended Complaint and its accompanying exhibits, as well as the PDF of the full Article that has been submitted by Defendant. I assume the factual allegations set forth in those submissions to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . . Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotations and citations omitted)); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). As discussed in further detail in this section, Defendant contends, and Plaintiff does not dispute, that the original Article had three embedded images, the third of which contained a portion of the Photograph. (Ans. Ex. C.)  Plaintiff attached to the Amended Complaint a partial screenshot of the Article as it appeared online, with the headline, article text, and the first embedded image. (*See* Am. Compl. Ex. D.)  Plaintiff separately includes a screenshot of the third embedded image—the one that contained the Photograph—as Exhibit C.  (*See id.* Ex. C.)  Defendant submitted, as Exhibit C to the Declaration of Rachel F. Strom, a screenshot of the entire Article, featuring the same text as Plaintiff's version but including all three embedded images. (*See* Doc. 16-3.)  Plaintiff does not contest the authenticity or accuracy of these screenshots or suggest that I should not consider them.  In light of these facts, and in light of the fact that Plaintiff relies extensively on the Article—as the source of the publication of the Photograph that gave rise to its claims—I consider Defendant's more complete version of the Article.  I also find it appropriate to consider the current version of the Article as it appears online, given that Plaintiff herself provided the URL and makes an allegation about the Article in its current form, making it "integral" to her Complaint, *Chambers*, 282 F.3d 147. (*See* Am. Compl. ¶¶ 13, 17; *Cardi B Partners with Tom Ford for New Lipstick Shade*, XXL Mag, https://www.xxlmag.com/news/2018/09/cardi-b-tom-ford-lipstick-shade-named-after-her/ (last visited April 2, 2020).)  Moreover, "[i]t is generally proper to take judicial notice of articles and [websites] published on the [i]nternet." *Harty v. Nyack Motor Hotel Inc.*, No. 19-CV-1322 (KMK), 2020 WL 1140783, at *3 (S.D.N.Y. Mar. 9, 2020) (quoting *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010), *aff'd*, 483 F. App'x 613 (2d Cir. 2012), and collecting cases).  My references to Plaintiff's allegations should not be construed as a finding as to their veracity, and I make no such findings.

Ans." refers to Defendant's Answer to the Amended Complaint, filed on July 31, 2019. (Doc. 12.)

[2] "Am. Compl." refers to the Amended Complaint, filed on July 17, 2019. (Doc. 11.)



(*Id.* Ex. A.)  Plaintiff has a copyright to the Photograph, which is registered with the United States Copyright Office.  (*Id.* ¶ 11.)

On September 10, 2018, Townsquare ran an article on XXL Mag entitled *CardiB Partners with Tom Ford for New Lipstick Shade*, available at the URL https://www.xxlmag.com/news/2018/09/cardi-b-tom-ford-lipstick-shade-named-after-her/.  (*Id.* ¶ 13.)  The text of the Article read as follows:

> Cardi B is having a busy 2018 New York Fashion Week.  After allegedly getting into a fight with Nicki Minaj, the *Invasion of Privacy* rapper is now getting her own shade of lipstick from Tom Ford.
>
> The Tom Ford Beauty brand broke the news on Sunday (Sept. 9), posting an image of the bold blue shade and Cardi's name on Instagram.  "Meet Cardi. #TFBOYSANDGIRLS #TFLIP #TOMFORDBEAUTY," the caption of the post reads.
>
> Cardi also celebrated the news on IG[3], re-posting the Tom Ford post and adding, "Thank you so much @tomford and @tomfordbeatuy!!!  So excited for this and what's to come."
>
> Just the latest shade in Tom Ford's Lips & Boys collection, the new Cardi shade follows the brand's trend of naming lipsticks after other celebrities such as Julianne [Moore], Dakota [Johnson] and Naomi [Campbell].  There's no word yet when the lipstick inspired by Cardi will be released.

---

[3] "IG" is apparently a shorthand for "Instagram," a social media platform on which users post photographs and captions.

> As expected, the decision to name a lipstick after Cardi following the New York Fashion Week incident has led to a heated debate on the original Instagram post. While some fans were excited about the upcoming product, other's felt that Cardi doesn't deserve to have a lipstick named after her.
>
> But Cardi doesn't seemed to bothered by that. In another Instagram post, the rapper claimed the upcoming lipstick has already sold out, adding, "Sorry :/....."
>
> In footage from the fight, the "Be Careful" rapper can be seen throwing a shoe in the direction of someone, although it's hard to make out if it's actually Minaj. Cardi can also be heard yelling at someone for talking about her daughter, Kulture. "Write some shit about my daughter again," Cardi says.
>
> While it was reported that Bardi's fight was with the *Queen* artist, Cardi reportedly ended up fighting former *Love & Hip Hop: New York* star Rah Ali.
>
> Check out the Tom Ford Instagram post below.

(Ans. Ex. C (alterations and errors in original).) Beneath the last sentence of the article, XXL Mag embedded the three Instagram posts that were described in the Article.[4] (*Id.* ¶ 13; Ans. ¶ 13.) Plaintiff does not allege that the Post was embedded, alleging only that Defendant "expropriated" the Photograph and "displayed" it in the Article. (Am. Compl. ¶¶ 13, 15.) However, Defendant asserts that the Post was "embedded" (Ans. ¶ 13), and Plaintiff does not dispute this allegation. Moreover, in the current version of the Article, the two Instagram posts that remain displayed link directly to Instagram when clicked on, indicating they have been embedded. *See* Article, https://www.xxlmag.com/news/2018/09/cardi-b-tom-ford-lipstick-shade-named-after-her/ (last visited April 2, 2020). The first post, by account "tomfordbeauty," announced the lipstick collaboration. (Strom Decl. Ex. C, at 3.)[5] The second post, from Cardi

---

[4] An "embedded" image is one that "hyperlink[s] . . . to [a] third-party website." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018). "To embed an image, [a] coder or web designer . . . add[s] an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image." *Id.* Thus, the image appears on the new page, but links to and remains hosted on the third-party server or website. *See id.*

[5] "Strom Decl." refers to the Declaration of Rachel F. Strom in support of Defendant's motion for judgment on the pleadings, filed on August 9, 2019. (Doc. 16.)

B's account, reproduced the post by tomfordbeauty in a screenshot, and thanked Tom Ford and tomfordbeauty.  (*Id.* at 4.)  The third post (the "Post"), from Cardi B, was a composite image that consisted of an image of the Tom Ford lipstick on the left, the Photograph on the right, and a header reading "Cardi B's Tom Ford Lipstick has already SOLD OUT!!!"  (*Id.* at 5.)  Above the composite image was Cardi B's username, her follower count, and a link entitled "View Profile."  (*Id.*)  Below the composite image was a link entitled "View More on Instagram," the number of "likes," and Cardi B's caption for the post:  "Sorry :/ …"  (*Id.* at 5.)  Below the caption was a link entitled "view all [] comments" and below that, a link entitled "Add a comment . . . ."  (*Id.*)

The Post appeared as follows:



(*Id.* Ex. C; Strom Decl. Ex. C.)  After Plaintiff filed this lawsuit, Defendant removed the Post from the Article.  (Am. Compl. ¶ 17.)

5

## II.     Procedural History

Plaintiff commenced this action by filing a complaint on May 28, 2019.  (Doc. 1.)  The complaint was administratively rejected by the Clerk's Office, and Plaintiff refiled the complaint on May 29, 2019.  (Doc. 4.)  Defendant filed its answer on June 26, 2019.  (Doc. 10.)  Plaintiff filed an Amended Complaint on July 17, 2019.  (Doc. 11.)  Defendant filed its Answer to the Amended Complaint on July 31, 2019.  (Doc. 12.)

On August 9, 2019, Defendant filed a motion for judgment on the pleadings, (Doc. 14), with a memorandum of law, declaration, and exhibits in support, (Docs. 15–16).  Plaintiff filed her memorandum of law in opposition on September 6, 2019.  (Doc. 19.)  Defendant filed its reply on September 24, 2019.  (Doc. 21.)

## III.     Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss, accepting all factual allegations in the [non-moving party's pleading] as true and drawing all reasonable inferences in the nonmoving party's favor." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (internal quotation marks omitted).  Therefore, to survive a motion pursuant to Rule 12(c), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers*

*v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings").

On a Rule 12(c) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs*, 647 F.3d at 422 (internal quotation marks omitted). The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks omitted).

### IV. Discussion

#### A. *Applicable Law*

The Copyright Act grants a copyright owner the exclusive rights to authorize the reproduction, distribution, and preparation of derivatives of the owner's work. 17 U.S.C. § 106. These rights, however, are in "inevitable tension" with "the ability of authors, artists, and the rest of us to express them- or ourselves by reference to the works of others." *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006). The doctrine of fair use mediates between these two sets of interests and infuses copyright law with the necessary "breathing space." *Id.* (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Under this doctrine, "a defendant who otherwise would have violated one or more of these exclusive rights may avoid liability if [it] can establish that [it] made 'fair use' of the copyrighted material." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014). "To evaluate whether a particular use qualifies as 'fair use,' [a court] must engage in 'an open-ended and context-sensitive inquiry'" that focuses on four non-exclusive factors set forth in the Copyright Act: (1)

the purpose and character of the use, (2) the nature of the work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of copyrighted work. *Id.* (quoting *Blanch*, 467 F.3d at 250). The Copyright Act also provides examples of purposes for copying that would constitute fair use: criticism, comment, news reporting, teaching, scholarship, and research. 17 U.S.C. § 107. These examples, however, are "illustrative and not limitative," *Campbell*, 510 U.S. at 577, and the court's "task is not to be simplified with bright-line rules," *Swatch*, 756 F.3d at 81 (quoting *id.*).

Fair use is an affirmative defense, and so a defendant accused of copyright infringement bears the burden of showing that its use of a work was fair. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015). The determination of fair use is typically a "mixed question of fact and law." *Swatch*, 756 F.3d at 81. However, it may be adjudicated on a Rule 12(c) motion "where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013); *see also In re Lehr Constr. Corp.*, 666 F. App'x 66, 68 (2d Cir. 2016) (summary order). Accordingly, numerous courts in this district have "resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497, 504 (S.D.N.Y. 2017), *aff'd,* 729 F. App'x 131 (2d Cir. 2018).

B.     *Application*

Plaintiff asserts that Defendant infringed on her copyright by reproducing the Photograph on its website without licensing it. (Am. Compl. ¶¶ 19–24.) Defendant does not dispute, for purposes of this motion, that it reproduced the Photograph,[6] but contends that its use of the Photograph was fair. (Def.'s Mem. ¶ 8.)[7] To assess whether Defendant's reproduction of the Photograph was a fair use, I consider each of the four factors in turn.

### 1.   The Purpose and Character of the Use

The first statutory factor—"[t]he heart of the fair use inquiry" in this Circuit—calls on the court to examine "the purpose and character of the use," including whether the use "is of a commercial nature or is for nonprofit educational purposes." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001), *as amended* (May 15, 2001); *see also Bloch*, 467 F.3d at 251. The focus of this factor is whether the use "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Campbell*, 510 U.S. at 579 (citation and internal quotation marks omitted). "[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild*, 804 F.3d at 214. "[T]he critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different

---

[6] I note that the Second Circuit has not addressed whether and when embedding an image that is hosted elsewhere constitutes "display" within the meaning of the Copyright Act, and only a handful of district courts across the country have discussed the question. *See Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 591 (S.D.N.Y. 2018) (discussing cases and concluding that on the facts at bar, "when defendants caused the embedded Tweets to appear on their websites, their actions violated plaintiff's exclusive display right.") However, Defendant has not raised this issue, and I do not address it.

[7] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant Townsquare Media, Inc.'s Motion for Judgment on the Pleadings, filed on August 9, 2019. (Doc. 15.)

from that for which it was created." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016).

While the Copyright Act suggests that use of a copyrighted work for news reporting purposes is likely to constitute fair use, "a news reporting purpose by no means guarantees a finding of fair use." *Swatch*, 756 F.3d at 85. "After all, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Id. (*quoting *Harper & Row*, 471 U.S. at 557.) Thus, courts have held that it is not fair to "use [] an image solely to present the content of that image, in a commercial capacity," or to otherwise use it "for the precise reason it was created." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016). For example, it is not fair use to republish a photograph of a celebrity or public figure intended to generically accompany an article about that person or to describe the event depicted in the photograph. *See Barcroft*, 297 F. Supp. 3d at 352; *BWP Media USA, Inc.*, 196 F. Supp. 3d at 407; *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 429 (S.D.N.Y. 2018).[8] Such uses "merely supersede[] the objects of the original creation." *See Bloch*, 467 F.3d at 251. However, use of a copyrighted photograph may be appropriate where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft*, 297 F. Supp. 3d at 352. "For instance, a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about. *See, e.g.*, *Konangataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June

---

[8] These three cases were decided upon a fuller record than the instant case, but the courts' decisions on the first fair use factor ultimately rested on a comparison of the work and the publication that used the work. *Barcroft*, 297 F. Supp. 3d 339 (after bench trial); *BWP Media USA, Inc.*, 196 F. Supp. 3d at 407 (after bench trial); *Otto*, 345 F. Supp. 3d at 427–30 (on summary judgment).

21, 2017). Similarly, a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph. *See, e.g.*, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000)."[9] *Id.* Courts have also found fair use in cases in which a website published a screenshot of an article from another publication that contained a copyrighted photograph, alongside criticism of the article. *Yang*, 405 F. Supp. 3d at 544 (deciding a motion to dismiss); *Clark*, 2019 WL 1448448, at *4 (same).

Applying these principles and drawing all inferences in Plaintiff's favor, this factor favors Defendant because the Article uses the Photograph for an entirely different purpose than originally intended. The Photograph was taken to "depict Cardi B at Tom Ford's fashion show." (Pl.'s Opp. 13.)[10] *See also Barcroft*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("Paparazzi photographs . . . are designed to document the comings and goings of celebrities, illustrate their fashion and lifestyle choices, and accompany gossip and news articles about their lives."). However, as is apparent on the face of the Article, Defendant did not publish the Photograph simply to present its content. It did not use the Photograph as a generic image of Cardi B to accompany an article about Cardi B, *see BWP Media USA*, 196 F. Supp. 3d at 407, or as an image of her at Tom Ford's fashion show alongside an article about the fashion show, *see Barcroft*, 297 F. Supp. 3d at 352; *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 429

---

[9] In *Nunez*, the plaintiff took photographs of the 1997 Miss Puerto Rico Universe, which generated public controversy about whether they were "pornographic" and whether the pageant winner should be permitted to retain her crown. 235 F.3d at 21. The defendant published three of the photographs alongside articles about the controversy. *Id.* The First Circuit held that the first prong weighed in favor of fair use because while the photographs were initially created to appear in modeling portfolios, defendant published them "to place its news articles in context; as the district court pointed out, 'the pictures were the story.' It would have been much more difficult to explain the controversy without reproducing the photographs." *Id.* at 23–24.

[10] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, filed on September 6, 2019. (Doc. 19.)

(S.D.N.Y. 2018).[11] Rather, Defendant published the Post, which incidentally contained the Photograph, because the Post—or, put differently, the fact that Cardi B had disseminated the Post—was the very thing the Article was reporting on.[12]

The Article begins by juxtaposing the news of the lipstick collaboration with rumors that Cardi B had recently gotten into a fight with Nicki Minaj, another rapper. It goes on to describe the social media posts by Tom Ford and Cardi B introducing the collaboration, and the ensuing "heated debate" among fans about that announcement, in light of the rumors about the fight. Then the Article presents Cardi B's reaction to that "heated debate": her Instagram post reporting that the lipstick has sold out, with the caption: "Sorry:/ …" Finally, the Article reports additional facts about the rumored fight, then embeds the relevant Instagram posts, one of which happens to include the Photograph because the original poster—Cardi B—included it. The Article does not mention the Photograph, nor does the Photograph in and of itself pertain to anything reported on in the Article. Thus, Defendant's inclusion of the Photograph as part of the Post was not simply to "present the content of that image"—Cardi B, or perhaps Cardi B at the

---

[11] The other cases cited by Plaintiff are also inapposite for similar reasons. (*See* Pl.'s Opp. 10.) In *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, at *12 (S.D.N.Y. Sept. 21, 2018), the court granted summary judgment dismissing fair use defense as to one of two allegedly infringing uses where defendant "merely reported that "[t]he upcoming Marvel Movie Spider-Man: Homecoming is currently filming in New York, and the steady stream of on-set images and videos continues," then included a gallery of these images at the end of the article. "In other words, the Gallery Article involves 'the use of an image solely to present the content of that image.' *BWP Media*, 196 F.Supp.3d at 407. Such a use is not transformative." *Id.* Similarly, in *Psihoyos v. National Examiner*, 97-cv-7625 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998), defendant, a tabloid, published a copyrighted photograph of plaintiff in front of his modified "art car" alongside an article about art cars in America and a caption reading "Larry Fuente's fintastic Mad Cad is inlaid with beads, rhinestones, shoe soles and toy soldiers—and highlighted with fabulous flamingo-adorned tail fins." The court denied defendant's motion to dismiss, which it treated as a motion for summary judgment, because "[t]he Examiner's use [was] not transformative . . . its piece uses the photo to show what it depicts." *Id.* These cases are distinguishable for the same reasons *BWP Media*, *Barcroft*, and *Otto* are distinguishable.

[12] Plaintiff contends at one point that Defendant used the Photograph merely to illustrate "a news report about Cardi B at Tom Ford's fashion show." (Def.'s Opp. 13.) This is manifestly untrue; although the Article generally mentions "Fashion Week" being "busy" for Cardi B, it does not mention the Tom Ford fashion show in particular.

Tom Ford fashion show, *i.e.* the purpose the Photograph was created for[13]—*Gossip Cop Media, Inc.*, 196 F. Supp. 3d at 407. Rather, Cardi B's making and dissemination of the Post, not the image that was posted, was "itself the subject of the story." *Barcroft*, 297 F. Supp. 3d at 352. In other words, Defendant published the Post in order to provide readers with the original social media interactions reported on by the Article,[14] and included the Photograph as a necessary part of the Post.[15] Indeed, no other image—not even "the Photograph [itself] as a standalone image"—would have fulfilled the same purpose as the Post itself, *see Clark*, 2019 WL 1448448.[16] Merely displaying the Post without the Photograph would have been nonsensical in appearance as well as potentially impossible, given that the Post is embedded and hyperlinked, rather than inserted as an image. The Photograph's function was wholly "transform[ed] . . . in [its] new context," *Barcroft*, 297 F. Supp. 3d at 352, and as a result the Article's publication of the Post in no way "merely supersedes" the original work. *See Campbell*, 510 U.S. at 579.

---

[13] Although Cardi B may have used the Photograph in this illustrative manner, the purpose her underlying use, whether licensed or unlicensed, has no bearing on whether Defendant's use of the Photograph for an entirely different function and purpose was fair.

[14] A further logical inference of Defendant's purpose is that Defendant sought to link readers to the relevant posts; however, Defendant does not explicitly make this argument.

[15] Plaintiff argues that Defendant's use was not transformative because it "did not report on any political or social controversy that arose because of the very existence of the Photograph itself." (Def.'s Mem. 7.) "As the United States Court of Appeals for the Second Circuit has instructed, '[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative.'" *Clark*, 2019 WL 1448448, at *3 (quoting *Cariou*, 714 F.3d at 706).

[16] Plaintiff alleges in her Amended Complaint that after she filed the initial Complaint, Defendant "replaced the Post with another image of Cardi B that it licensed through Getty Images, demonstrating that Defendant's unauthorized use of the Photograph in the first instance was not integral to the message it sought to convey." (Am. Compl. ¶ 17.) In support of this statement, Plaintiff cites to Exhibit D, but Exhibit D is simply a screenshot of the Article that includes a portion of the Instagram post from Tom Ford, but is cut off below that and includes no other images or Posts. Thus, Exhibit D does not support Plaintiff's allegation. Indeed, the Article in its current form contradicts it: it includes only the Tom Ford Instagram post and Cardi B's post thanking Tom Ford, but does not contain any other images. This suggests that Defendant simply deleted the Post and did not insert any alternative image—or if it did insert an alternative image, ultimately deleted it—lending further support for the idea that the Post was the only image that made sense in context.

Judge Paul G. Gardephe's analysis in *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) is instructive, although the facts did not mirror the facts here, making the decision distinguishable. In *Ferdman*, the defendant published an article that stated that "images and videos from the set [of Spider-Man: Homecoming] have steadily emerged. The newest shot comes from [the Instagram of] Spider-Man actor Tom Holland himself." *Id.* at 523. The article then described that image, which had been posted to Holland's Instagram, repeated Holland's accompanying caption, and inserted the photograph—not the Instagram post itself— below the article. *See id.* Judge Gardephe observed that, as in *Nunez*, the photograph "was the story," but ultimately denied defendant's motion for summary judgment because (1) there were no visual differences between the copyrighted photograph and the photograph included in the article, and (2) the statement at the beginning of the article that "images and videos have steadily emerged" suggested that the photograph might merely have been used to "announce its existence," which would not be transformative. *Id.* at 534–37. Judge Gardephe held that these issues might cause reasonable jurors to disagree about whether the use was transformative and so the issue could not be resolved as a matter of law. *Id.* at 537.

Here, as in *Ferdman*, the Post "was the story." *Id.* at 534. But unlike in *Ferdman,* Defendant embedded the entire Instagram Post, still bearing the rest of the elements of the image that Cardi B had posted—the header and the photo of the Tom Ford lipstick—along with Cardi B's caption and various Instagram standard links, making clear that the subject of the image was the Post, not the Photograph. *Cf. Yang,* 405 F. Supp.3d at 544 ("To the extent that the Photograph was used as part of the composite Screenshot to identify the Post Article itself, it indisputably constitutes a different use than its original purpose."); *Clark*, 2019 WL 1448448, at *3 (in finding defendant's use fair, noting that the article "did not reproduce the Photograph as a

14

standalone image, but as part of the Screenshot's composite image that showed the manner in which the *Post* Article's headline, author byline, and the Photograph were arranged on the *Post*'s website.") In addition, unlike the article in *Ferdman*, Defendant's Article does not even mention the Photograph itself, much less report on it specifically; its focus is on the launch of the Tom Ford lipstick, the ensuing social media controversy, and Cardi B's Post. These distinctions foreclose a reasonable juror from finding Defendant's use not transformative.

The fact that the Article did not include any commentary or criticism about the Post, unlike the uses in *Yang* and *Clark*, does not undermine this conclusion. While "[c]ourts often find [news reporting] uses transformative by emphasizing the altered purpose or context of the work, as evidenced by surrounding commentary or criticism," commentary or criticism is not required to render a use transformative where "the two works ha[ve] different messages and purposes." *Swatch*, 756 F.3d at 84 (finding that news service's publication of audio recording of plaintiff's earnings call was fair use even though news service "provided no additional commentary or analysis," because the sound recording provided additional data not available in the transcript, and defendant's "purpose . . . was to publish this factual information to an audience from which [plaintiff's] purpose was to withhold it.")

Nor does the perhaps trivial nature of the Article weigh against Defendant. (*See* Def.'s Opp. 11.) While "[t]he ultimate test of fair use . . . is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts,' [U.S. Const., art. I, § 8, cl. 8,] would be better served by allowing the use than by preventing it," *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (internal quotation marks omitted), the Supreme Court has cautioned courts to "be chary of deciding what is and what is not news," *Harper & Row*, 471 U.S. at 561; *see also Nunez,* 235 F.3d at 22–23 ("[T]he fact that the story is

15

admittedly on the tawdry side of the news ledger does not make it any less of a fair use."); *Ferdman*, 342 F. Supp. 3d at 535 (declining to evaluate the newsworthiness of the copyrighted photograph).

Finally, Plaintiff argues that Defendant is "a for-profit publisher" that "disseminates commercial news content on its website" including advertisements, "evincing Defendant's intent to exploit Plaintiff's work." (Pl.'s Opp. 14.) The commercial nature of a use may indeed counsel against a finding of fair use. *See Swatch*, 756 F.3d at 83; *Harper & Row*, 471 U.S. at 562 ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.") However, the Second Circuit has recognized that "almost all newspapers, books and magazines are published by commercial enterprises that seek a profit." *Swatch*, 756 F.3d at 83. The Supreme Court has acknowledged that tension and "stated that '[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of copyrighted material without paying the customary price.'" *BWP Media USA, Inc.*, 196 F. Supp. 3d at 407–08 (quoting *Harper & Row*, 471 U.S. at 562). "That a defendant's use of copyrighted material is for profit bears less weight when that use is highly transformative; but where a defendant's use merely 'supersedes the objects' of the original, the commercial nature becomes more relevant." *Id.* (quoting *Cariou*, 714 F.3d at 708); *see also Blanch*, 467 F.3d at 254. Here, regardless of whether Defendant profits from pageviews of the Article, its use of the Photograph is transformative, outweighing the commercial nature of the use.

Accordingly, I find that the first factor strongly favors fair use.

### 2. The Nature of the Work

The second statutory factor looks at the nature of the copyrighted work and its expressive content. *See* 17 U.S.C. § 107(2). This factor acknowledges "the fact that 'some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" *Swatch*, 756 F.3d at 87 (quoting *Campbell*, 510 U.S. at 586). In assessing this factor, "courts consider whether a work is creative versus factual, and unpublished versus published, with copyright protections applying more broadly to creative and unpublished works. *BWP Media USA, Inc.*, 196 F. Supp. 3d at 408 (citing *Harper & Row*, 471 U.S. at 563–64 and *Blanch*, 467 F.3d at 256). Nevertheless, the Second Circuit has acknowledged that this factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild*, 804 F.3d at 220.

Here, the Photograph contains "both informational and creative elements": it was taken to "document [its] subject," a celebrity, but also displays some "technical skill and aesthetic judgment." *BWP Media USA*, 196 F. Supp. 3d at 408; *see also Barcroft*, 297 F. Supp. 3d at 354 ("Although photography, including photography of a celebrity walking around in public, certainly involves skill and is not devoid of expressive merit, the [paparazzi] Images are further from the core of copyright protections than creative or fictional works would be.") This "render[s] the degree of creativity a relatively neutral consideration." *BWP Media* USA, 196 F. Supp. 3d at 408. However, the Photograph was previously published by Cardi B on her Instagram; thus, pairing the neutrality of the images "with the fact of previous publication, the nature of the images tips slightly in Defendant's favor." *Id.*

Therefore, the second factor weighs in favor of fair use.

### 3. The Portion of the Work Used

The third statutory factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor compares the portion of the use with the copyrighted work as a whole, with the goal of determining if it is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The court considers "not only the quantity of the materials taken but also 'their quality and importance' to the original work. *Cariou*, 714 F.3d at 710. "The crux of the inquiry is whether 'no more was taken than necessary.'" *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620–21 (S.D.N.Y. 2015) (quoting *id.* at 98).

As a quantitative matter, the Post included an uncropped, though resized, version of the Photograph. As a qualitative matter, however, although Plaintiff complains that Defendant could have used any other image of Cardi B to accompany its article or requested a license from Plaintiff, (Def.'s Mem. 11), the Post is the only image that could have accomplished XXL Mag's journalistic objective of describing a social media story and providing readers with the relevant posts. Even the Photograph itself, on its own, would not have been a reasonable substitute. Further, within its objective, Defendant used only as much of the Photograph as was already included in Cardi B's Post; in other words, "no more was taken than necessary." *Pirro*, 74 F. Supp. 3d at 621; *see also Yang*, 405 F. Supp. 3d at 546–47 ("[I]f copying the original 'any less would [make] the picture useless to the story[,]' the substantiality of the copying is "of little consequence." (quoting *Nunez*, 235 F.3d at 24)).

Therefore, the third factor weighs in favor of fair use.

### 4. The Potential Market for or Value of the Work

The fourth factor evaluates the effect of the use on the market for or the value of the original work. *See* 17 U.S.C. § 107(4). "When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them." *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018). Courts look here not for theoretical or speculative harm, but for copying of "sufficiently significant portions of the original as to make available a significantly competing substitute." *Authors Guild*, 804 F.3d at 223. The focus is on whether the use would "deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Id.* Here, because the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work. *See Authors Guild*, 804 F.3d at 223; *Yang*, 405 F. Supp. 3d at 548; *Clark,* 2019 WL 1448448, at *4 (assessing whether a website's publication of a screenshot of a newspaper article that included copyrighted photograph constituted fair use). "[T]here is little risk that someone looking to license or purchase an image of a [Cardi B] would select the [Post] instead of the Photograph, thereby potentially diverting revenue to [Defendant] that would have otherwise gone to [Plaintiff]." *Id.* (citing *Capitol Records, LLC*, 910 F.3d at 662–63.

Thus, the fourth factor also weighs in favor of fair use.

### 5. Overall Assessment

The four non-exclusive statutory factors discussed above are to be weighed together, along with any other relevant considerations, in light of the goals of copyright laws. *See Authors*

*Guild*, 804 F.3d at 225.  Drawing all reasonable inferences in Plaintiff's favor, I have found that on the face of the Amended Complaint, the four factors weigh in favor of Defendant: "Defendant's use was transformative, its use was reasonable in light of that end, the work was already published, and there is no plausible risk to any market for licensing of the original work." *Yang*, 405 F. Supp. 3d at 548.  This is sufficient to establish an affirmative defense of fair use on a motion for judgment on the pleadings, and I conclude that Defendant's use of the Photograph was fair as a matter of law.  *See id.*

## V.  Conclusion

For the foregoing reasons, Defendant's motion is GRANTED and this action is dismissed with prejudice.  The Clerk of Court is directed to terminate the motion at Document 14, enter judgment, and close this case.

SO ORDERED.

Dated: June 1, 2020
      New York, New York

Vernon S. Broderick
United States District Judge