UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REBECCA FAY WALSH,

                Plaintiff,

   - against -

TOWNSQUARE MEDIA, INC.

                Defendant.

Case No. 1:19-cv-04958 (VSB)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL RULE 6.3 AND RULE 60(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) of the Federal Rules of Civil Procedure, Plaintiff Rebecca Fay Walsh ("Plaintiff" or "Walsh"), via counsel, respectfully submits this memorandum of law in support of Plaintiff's Motion for Reconsideration or Reargument of the District Court's Order, dated June 1, 2020, which dismissed Plaintiff's amended complaint as a matter of law upon a finding of fair use.

## LEGAL STANDARD

A party seeking reconsideration or reargument pursuant to Local Civil Rule 6.3 must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). In the alternative, the movant must "demonstrate the need to correct a clear error or prevent manifest injustice." *Sanofi-Synthelabo v. Apotex, Inc.,* 363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005).

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides in relevant part that "the court may relieve a party . . . from a[n] . . . order . . . for the following reasons: (1) mistake . . ." Fed. R. Civ. P. 60(b)(1).  "Rule 60(b)(1) motions premised upon 'mistake' are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order." *Lugo v. Artus*, No. 05-cv-1998 (SAS), 2008 WL 312298, at \*2 (S.D.N.Y. Jan. 31, 2008) (citation and internal quotations omitted). "Thus, Rule 60(b)(1) motions can be used by a trial court to correct judicial errors." *Id., citing International Controls Corp, v. Vesco,* 556 F.2d 665, 670 (2d Cir. 1977) (stating that district court's mistake of "substantive legal nature" may be corrected under Rule 60(b)(1)); *see also Kingvision Pay-Per-View Ltd. v.*

*Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir. 1999) ("[T]he words 'mistake' and 'inadvertence' . . . may include mistake and inadvertence by the judge.")

Relief under 60(b)(1) is also appropriate where a court may have overlooked certain parties' arguments or evidence in the record. *See, e.g., Rumsey v. New York State Dep't of Corr. Servs.,* 580 F.Supp. 1052 (N.D.N.Y.1984) (granting 60(b)(1) motion where court may have overlooked triable issues of fact). As more fully detailed below, Plaintiff's motion for reconsideration or reargument pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) satisfies the applicable standards.

## ARGUMENT

**POINT I:** **THE COURT HAS OVERLOOKED THAT PLAINTIFF'S COPYRIGHTED PHOTOGRAPH IS A SEPARATE AND DISTINCT ASSET FROM CARDI B'S INSTAGRAM POST**

In analyzing the first fair use factor, the Court determined that Defendant's secondary use of the Photograph was transformative because "Defendant published the Post, which incidentally contained the Photograph, because the Post—or, put differently, the fact that Cardi B had disseminated the Post—was the very thing the Article was reporting on." [Order, Dkt. # 22, p. 12] The Court cited Judge Furman's decision in *Barcroft Media, Ltd. v. Coed Media Group, LLC,* No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. 2017) which correctly determined that a secondary use may be transformative where the news reporting is about the copyrighted work at issue in the lawsuit.

However, the Court has misapplied the law to the facts at bar. A cursory glance at the Defendant's article reveals that Defendant offered no commentary whatsoever directed at the Photograph itself, nor was there any news reporting *about* the Photograph at all. [Dkt. # 17-4]

Instead, the alleged controversy addressed by Defendant surrounded Cardi B's Instagram ("IG") post, and, more particularly, the text contained within that post which reported on Cardi B's partnership with Tom Ford.

But Walsh does not claim any rights to the Cardi B IG Post or its literary text. Cardi B is the presumptive copyright holder of the text printed in her particular IG Post. Walsh's ownership interest resides in the Photograph itself, which the Copyright Act refers to as a "pictorial work." See 17 U.S.C. § 101 ("'Pictorial, graphic, and sculptural works' include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans."); compare *id.* ("'Literary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied."). The Court has improperly conflated the "pictorial work" at issue in this lawsuit with a "literary work" to which Walsh has no claim to ownership.

Most of the cases cited by the Court in support of its position involve controversies surrounding the very existence of a pictorial work, *see Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photograph of Miss Puerto Rico Universe became the subject of controversy); or audio-visual work, *see Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal."); *Clark v. Transportation Alternatives*, Inc., 18-cv-9985 (VM) 2019 WL 1448446 (S.D.N.Y. March 18, 2019) (fair use found where

non-profit defendant used the plaintiff's photograph to criticize the New York Post's journalistic use of the photograph); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537 (S.D.N.Y. 2019) (fair use found where defendant used the plaintiff's photograph to criticize a New York Post article which featured the photograph).  In all of these cases, the plaintiff was the owner of the photograph or video that was subject to an alleged controversy.

Here, in contrast, Defendant's infringing article addresses a controversy surrounding a separate literary work which is not owned by Plaintiff.  The Court has essentially treated Cardi B's IG Post, which is a literary work, and Walsh's pictorial work as a unified work.  But the primary case cited by the Court, *Barcroft,* does not support this conflation of two separate works into a single work for purposes of commentary.

After all, Defendant could have conveyed the exact same message by embedding Cardi B's IG Post article without using Plaintiff's actual photograph.  While the Court surmises that it would be "potentially impossible" to display Cardi B's IG Post without Plaintiff's photograph [Dkt. #22, p. 13], such speculation should not support dismissal of Plaintiff's claim at the pleading stage.  Material questions of fact exist regarding whether Defendant had the technology at its disposal to prevent the display of Plaintiff's copyrighted work, even in the context of an embedded IG Post.

The Court's reliance on *Clark v. Transportation Alternatives*, Inc., 18-cv-9985 (VM) 2019 WL 1448446 (S.D.N.Y. March 18, 2019) is also misplaced.  There, Judge Marrero found that the not-for-profit defendant used the plaintiff's photograph of a dockless bicycle to directly criticize the New York Post's journalistic selection of the photograph to illustrate its editorial story. *Clark,* 2019 WL 1448448, at *3 ("As used in the TransAlt Article, then, the Photograph is no longer just a depiction of a dockless bicycle, but a sly barb at the [*New York*] *Post*'s sloppy

4

journalism").  Here, in contrast, Defendant did not use the Photograph to criticize the merits of the Photograph, nor to comment on or criticize Cardi B's decision to post the Photograph as part of her IG Post.   Indeed, the text of Defendant's article had absolutely nothing to do with the Photograph.   *Any* photograph of Cardi B would have sufficed.

Fair use was not designed to accord unfettered privilege to non-essential uses; it only favors transformative uses where the copyrighted material is essential and even vital to the secondary publisher's First Amendment right.  *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) (finding that rap group's raunchy parody song of Roy Orbison's "Pretty Woman" was fair use, particularly as the rap group was entitled to "conjure up" the original to express its viewpoint); *see also Baraban v. Time Warner, Inc.,* No. 99 CIV. 1569 (JSM), 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000) ("The photograph is an <u>integral</u> part of that commentary because Mr. Baraban's artistic portrayal of the wholesome duo on the Ihlenfeldt farm makes the point that nuclear energy is safe in a way that words alone could not.") (underline added); *Greenberg v. Nat'l Geographic Soc.*, 244 F.3d 1267, 1274 (11th Cir. 2001), *overruled in later appeal*, 488 F.3d 1331 (11th Cir. 2007), *reh'g en banc granted, opinion vacated*, 497 F.3d 1213 (11th Cir. 2007), *on reh'g en banc*, 533 F.3d 1244 (11th Cir. 2008) ("the use of the diver photograph far transcended a mere reprinting or borrowing of the work. As explained above, it became an <u>integral</u> part of a larger, new collective work. The use to which the diver photograph was put was clearly a transformative use.") (underline added).

Here, according to the Court, Defendant's display of the Photograph was merely "incidental" to the Defendant's news article about Cardi B's IG Post.  [Dkt. #22, p. 12]  The Photograph was <u>not integral</u> nor essential to Defendant's commentary or exercise of its First Amendment Right.  Rather, it was just "eye candy" to show what Cardi B looks like.  But that's

all the more reason why Defendant should have obtained a license to display it.  Using protected copyrighted materials as "click bait" is not privileged use, particularly where, as the Court recognized, the Photograph was <u>not</u> integral to Defendant's infringing article about Cardi B's IG Post. [Dkt. #22, p. 12]

In sum, a photograph should not lose copyright protection simply because it is re-published in conjunction with a literary work – or social media post – that serves as commentary by secondary commercial publishers such as Townsquare Media.  If that were the case, then secondary publishers could just rip off whatever photographs they like based on some controversy raised by an accompanying literary work.  The Court's decision has essentially opened Pandora's box by allowing news publishers to steal photographs by means of "composite Screenshots", a feeble technical end-run around the protections accorded by the Copyright Act.  So long as the secondary publisher is permitted to copy the pictorial work in conjunction with any literary work or third-party social media post, the protections accorded to photographers under the Copyright Act are rendered meaningless.

**POINT II:** **THE COURT HAS OVERLOOKED THAT WIDESPREAD USE OF THE PHOTOGRAPH IN A SIMILAR MANNER ESTABLISHES A POTENTIAL MARKET IN WHICH WALSH HAS AN EXPECTATION TO COLLECT FEES**

With respect to the fourth factor, it is well-established that a secondary use may impair the potential market for the Photograph where "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted). "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990).

Here, the Court held that "[Cardi B's] Post is the only image that could have accomplished XXL Mag's journalistic objective of describing a social media story and providing readers with the relevant posts."  [Dkt. #20, p. 19].  But a reasonable jury could determine that the market for paparazzi photographs of celebrities, on one hand, and the market for news articles about the celebrities depicted in such photographs on the other, occupy a parallel market, regardless of whether such images are disseminated through traditional news outlets or a celebrity's social media accounts.  The Court's summary adjudication of the fourth fair use factor presupposes that the audience for Walsh's photograph of Cardi B at the Tom Ford show, and Town Square's news article about Cardi B's IG Post, serve different markets.  But such presupposition is both premature at the pleading stage, and will ultimately prove incorrect at trial.

Under prevailing Second Circuit law, Walsh is entitled to collect licensing fees in whatever reasonably expected potential markets may exist. *See Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 508–09 (S.D.N.Y. 2018) ("the inquiry [of the fourth factor] looks to whether infringement will affect the *potential* market for the copyrighted work in "traditional, reasonable, or *likely to be developed* markets." (citing *Bill Graham Archives*, 448 F.3d at 614 (emphasis added).

A commercial news article about Cardi B's business partnerships, which uses a protected photograph depicting Cardi B, is certainly a reasonable market that a paparazzi photographer would likely occupy.  In the current Digital Age, driven by celebrity and the 24-hours news cycle, it is entirely foreseeable that commercial news organizations will publish articles featuring the Instagram posts of celebrities.  This is practically par for the course in today's entertainment news reporting.  So the idea that commercial news organizations such as Townsquare Media can

avoid paying for copyrighted content by simply re-publishing the IG posts of popular celebrities

is very troubling, and threatens to expose celebrity images to widespread infringement under the

color of "fair use."

As per *Fitzgerald v. CBS Broad., Inc.*,

CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outfits . . . The market for media licenses for these photographs clearly exists, and is the only market in which the photographs have seen use: Various media outfits have used the photographs more than 20 times, resulting in over $60,000 in fees and settlements for exactly this kind of use . . . If the Court finds that CBS's use was fair use, then all of these media uses—and uses like them in the future— would also be fair use, destroying the only potential market that exists for the photographs. It is hard to imagine that freelance photojournalists would continue to seek out and capture difficult to achieve pictures if they could not expect to collect any licensing fees. This is exactly the kind of situation that copyright is meant to impact— where unrestricted use would likely dry up the source."

491 F. Supp. 2d 177, 189 (D. Mass. 2007); *accord Michael Grecco Prods.*, 345 F. Supp.

at 508–09 ("Because the images are substantially identical, publication by Defendants affect

the market for the work—more supply, less demand. The publication can reasonably

be expected to harm Plaintiff's ability to license the work for publication and use in derivative

works.")

Indeed, as Judge Woods noted in *Otto v. Hearst Communications, Inc:*

Publishing the Photograph without permission essentially destroys the primary market for its use. As the owner of the work, Otto had the right to try to sell the Photograph to media outlets, if he decided to do so. The fact that the Photograph was reported on so widely indicates that there was indeed a market for it. Hearst has done nothing to show that the general audience for Otto's photograph would not be equally satisfied with its version. Thus, the publication can reasonably be expected to harm Plaintiff's ability to license the work for publication and use in derivative works. Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work—simply put, more supply, less demand.

*Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 432–33 (S.D.N.Y. 2018).

Finally, the Court's reliance on "composite screenshots" to support its analysis of the fourth factor is detrimental to copyright protection.  Now, a downstream infringer only needs to create a composite image to avoid having to obtain a license.  This permits copyright infringers to engage in technical end-runs around Copyright law by stealing the image by means of a composite screenshot.  Such a simple "work-around" mechanism will facilitate outright theft and cannot possibly be upheld.

## **CONCLUSION**

Based on the foregoing, the Court should grant Plaintiff's motion for reconsideration and/or vacate its Order and allow this case to proceed on the merits for a determination by the fact-finder.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**s/richardliebowitz/**
Richard Liebowitz, Esq
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowitzLawFirm.com

*Counsel for Plaintiff*
*Rebecca Fay Walsh*